## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
DEBRA LYNN YOUNG             :     Civ. No. 3:17CV00970(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :
ACTING COMMISSIONER OF       :     June 12, 2018
SOCIAL SECURITY              :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

The plaintiff, Debra Lynn Young, brings this appeal pursuant to §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #14]. Plaintiff filed a memorandum of law in support of her motion. [Doc. #15]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #19].[1] Defendant filed a memorandum of law in support of its motion.

---

[1] On December 12, 2017, defendant filed two identical motions seeking an order affirming the final decision of the Commissioner. See Doc. #18; #19. On June 12, 2018, the Court terminated Doc. #18. See Doc. #22.

[Doc. #20]. Plaintiff declined to file a reply. [Doc. #21]. For the reasons set forth below, defendant's Motion for an Order Affirming the Commissioner's Decision is **GRANTED. [Doc. #19].** Plaintiff's Motion for Reversal or Remand of Commissioner's Decision is **DENIED. [Doc. #14].**

## I.    PROCEDURAL HISTORY[2]

Plaintiff filed concurrent applications for DIB and SSI, alleging disability beginning on December 31, 2010. See Certified Transcript of the Administrative Record, compiled on March 31, 2016 (hereinafter "Tr.") 188-203. With respect to plaintiff's claim for DIB, plaintiff's date last insured was September 30, 2012. See Tr. 16; Doc. #17 at 2. Plaintiff's applications were denied initially on January 6, 2014, see Tr. 138-145, and upon reconsideration on June 2, 2014, see Tr. 149-155. Plaintiff was self-represented throughout that process.

On May 14, 2015, plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Deirdre R. Horton. See Tr. 30-85. Plaintiff was not represented by counsel at the hearing. See Tr. 32. Plaintiff's sister, Heather Halem, also appeared and testified at the hearing. See Tr. 31-32, 75-86. On December 10, 2015, the ALJ issued a decision finding that

---

[2] The parties filed a joint Stipulation of Facts on December 6, 2017. See Doc. #17.

plaintiff "has not been under a disability, as defined in the Social Security Act, from December 31, 2010, through the date of this decision[.]" Tr. 25. Attorney Robert S. Reger appeared on behalf of plaintiff on January 27, 2016. See Tr. 11-12. Plaintiff, through Attorney Reger, filed a Request for Review of Hearing Decision/Order, see Tr. 9, and a memorandum in support, see Tr. 257-260. On April 25, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's December 10, 2015, decision the final decision of the Commissioner. See Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by Attorney Reger, filed this timely action for review and now moves to reverse and/or remand the Commissioner's decision. On appeal, plaintiff asserts that the ALJ made various errors that prevented her from receiving a full and fair hearing.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would

accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial

evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988). It is well established that "an ALJ's credibility determination is generally entitled to deference on appeal." <u>Selian v. Astrue</u>, 708 F.3d 409, 420 (2d Cir. 2013); <u>see</u> <u>also</u> <u>Kessler v. Colvin</u>, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must afford great deference to the ALJ's credibility finding, since the ALJ had the opportunity to observe the claimant's demeanor while the claimant was testifying." (citation and internal quotation marks omitted)); <u>Pietrunti v. Dir., Office of Workers' Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.

2012). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[]

... physical or mental ability to do basic work activities[]" to be considered "severe").[3]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

---

[3] Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, ALJ Horton concluded that plaintiff was not disabled under the Act. See Tr. 25. First, the ALJ determined that plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2012." Tr. 18. The ALJ then turned to Step One of the evaluation process and found that plaintiff had "not engaged in substantial gainful activity since December 31, 2010, the alleged onset date[.]" Id.

At Step Two, the ALJ found that the plaintiff had two severe impairments, "anxiety and a non-specified affective disorder[.]" Id. The ALJ considered plaintiff's "history of poly-substance abuse[,]" "brief and sporadic treatment for wrist, knee and back pain[,]" and alleged Post-Traumatic Stress Disorder ("PTSD"), but found they were not severe impairments. Tr. 18-19.

At Step Three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 20.

Specifically, the ALJ found that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." Id.

Before proceeding to Step Four, the ALJ determined plaintiff's RFC. The ALJ performed an analysis of the record in accordance with the requirements of 20 C.F.R. §§404.1529, 416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p. See Tr. 20. The ALJ also "considered opinion evidence in accordance with the requirements of 20 [C.F.R. §§] 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." Id. The ALJ found that plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is limited to simple, routine tasks. She cannot work with the general public. She can relate appropriately with coworkers, but is limited to frequent direct interaction with her coworkers." Id.

With these limitations, the ALJ found at Step Four that plaintiff was "unable to perform any past relevant work[.]" Tr. 24. Proceeding to Step Five, however, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform[.]" Tr. 25.

Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act "from October 31, 2010, through the date of this decision[.]" Id.

## V.   DISCUSSION

On appeal, plaintiff asserts that the ALJ erred in five respects, specifically by:

1. Failing to give proper weight to the opinion of plaintiff's treating APRN;

2. Failing to give proper weight to the opinion of the consultative psychological examiner;

3. Failing to consider whether plaintiff met or equaled Listing 12.05(C);

4. Failing to obtain the testimony of a vocational expert; and

5. Failing to give proper consideration to the testimony of plaintiff's sister.

The Court will address each of plaintiff's arguments in turn.

### A.   Material Facts

The Court's Scheduling Order required the parties to file a stipulation of facts "at the same time as the Plaintiff's motion, on or before **October 17, 2017**." Doc. #13 at 2. The parties failed to file a stipulation of facts by this deadline, and they did not move for an extension of time. Instead,

11

plaintiff attached a proposed stipulation of facts to the memorandum in support of plaintiff's motion. See Doc. #15 at 17. This proposed stipulation includes only seven facts, and contains no citations to the record. See id. In a footnote, plaintiff noted: "These facts have not been stipulated to. Counsel will make a good faith effort to agree on facts, and file a supplemental Stipulation of Facts forthwith." See id. On December 6, 2017, the parties filed a joint Stipulation of Facts. See Doc. #17 at 2. This stipulation contains the same seven facts as plaintiff's proposed stipulation and an eighth fact regarding plaintiff's date last insured. See Doc. #17.

The Scheduling Order further required that if any factual disputes remained between the parties after filing their joint stipulation, "plaintiff shall file as an exhibit to her motion a statement of all material facts the Plaintiff relies upon in support of her motion, with specific citations to the record supporting each item. Counsel for the plaintiff must also provide the Court with an affidavit detailing the efforts made to reach agreement as to the material facts." Doc. #13 at 2.

Plaintiff did not file a statement of all material facts or a corresponding affidavit. Therefore, the only facts identified by plaintiff as "material" are the eight material facts included in the parties' joint Stipulation of Facts.

**B.   Treating Source**

Plaintiff argues the ALJ erred by giving "little weigh to the opinions of plaintiff's treating source, Laura Griesman, APRN."[4] Doc. #15 at 11 (sic). Plaintiff contends that APRN Giesman's opinion was binding on the ALJ because her treatment notes and "the evidence of record" support her conclusions. Doc. #15 at 11-12. In response, defendant argues that "APRN Giesman is not considered an 'acceptable medical source' under the regulations, and only acceptable medical sources are 'treating sources' whose opinions may be entitled to controlling weight." Doc. #20 at 21. Defendant further argues that "the ALJ properly discounted APRN Giesman's opinions because they were unsupported by and inconsistent with the medical evidence, including, significantly, APRN Giesman's own treatment notes, containing mostly normal mental status findings (including good attention and concentration)." Id. at 22.

APRN Giesman is not considered a treating source whose opinion is entitled to controlling weight. Only "acceptable medical sources" can provide medical opinions and are considered treating sources whose opinions are entitled to controlling weight. See 20 C.F.R. §§404.1527(a)(2), (c), 416.927(a)(2), (c);

_____

[4] Each party spells APRN Giesman's name differently. See, e.g., Doc. #15 at 11; Doc. #20 at 22. The Court will use "Giesman" herein, which is the spelling reflected in the treatment notes. See, e.g., Tr. 577.

13

Dudley v. Berryhill, No. 3:16CV00513(SALM), 2018 WL 1255004, at
*9 (D. Conn. Mar. 12, 2018). Acceptable medical sources include,
inter alia, licensed physicians. See 20 C.F.R. §§404.1513(a),
416.913(a). APRNs, social workers, and physician assistants,
amongst others, are not "acceptable medical sources," but rather
are considered "other sources." See 20 C.F.R. §§404.1513(d)(1)-
(4), 416.913(d)(1)-(4); SSR 06-03P, 2006 WL 2329939, at *2
(S.S.A. Aug. 9, 2006).

Opinions from "other sources" are still considered when
making "a determination or decision about whether the individual
is disabled." SSR 06-03P, 2006 WL 2329939, at *4. "Opinions from
'other medical sources' may reflect the source's judgment about
some of the same issues addressed in medical opinions from
'acceptable medical sources,' including symptoms, diagnosis and
prognosis, what the individual can still do despite the
impairment(s), and physical and mental restrictions." Id. at *5.

When weighing such an opinion, the Regulations require that
the ALJ consider the following factors: length of treatment
relationship; frequency of examination; nature and extent of the
treatment relationship; relevant evidence used to support the
opinion; consistency of the opinion with the entire record; and
the expertise and specialized knowledge of the source. See 20
C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2P, 1996

WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL

2329939, at *3-4. However,

> [n]ot every factor for weighing opinion evidence will
> apply in every case. The evaluation of an opinion from
> a medical source who is not an 'acceptable medical
> source' depends on the particular facts in each case.
> Each case must be adjudicated on its own merits based on
> a consideration of the probative value of the opinions
> and a weighing of all the evidence in that particular
> case.

Id. at *5.

In a report dated July 9, 2013 (the "July 9, 2013,

Report"), APRN Giesman stated that plaintiff had a history of

"flashbacks[,] nightmares[,] panic attacks[, and] paranoia[.]"

Tr. 382. APRN Giesman described plaintiff's appearance as "well-

groomed, appropriate clothing" and her cognitive status as

"alert [and] oriented, anxious, memory intact, slightly

pressured, coherent, normal thought content, linear, behavior

appropriate[.]" Id. APRN Giesman stated that plaintiff had no

problem "[t]aking care of personal hygiene[,]" "[c]aring for

physical needs[,]" and "[u]sing good judgment regarding safety

and dangerous circumstances[.]" Tr. 383. APRN Giesman indicated

that she could not opine on plaintiff's ability to use

appropriate coping skills, handle frustration, engage in social

interactions, or perform tasks. See Tr. 383-384. APRN Giesman

noted: "I have only seen Ms. Young 3 times for an intake [and]

medication management[.]" Tr. 383. The ALJ found:

While this report is given due consideration, it is not given significant weight because there are no treatment notes for the period it covers and the treatment is very limited. However it is give[n] weight to the extent that it is consistent with the residual functional capacity as stated above.

Tr. 23.

In a letter dated April 3, 2014 (the "April 3, 2014, Letter"), APRN Giesman stated: "Ms. Young's current GAF is 50. Because her symptoms wax and wane related to psychosocial stressors and refractory mood symptoms, she will likely need intensive medication treatment to function." Tr. 589. The ALJ stated that "[t]his letter is given weight to the extent that it has been considered during the formulation of the residual capacity as stated above." Tr. 23.

In a report dated April 18, 2014 (the "April 18, 2014, Report"), APRN Giesman noted that plaintiff was "well groomed[,]" but had "difficulty concentrating" and was "depressed [and] anxious[.]" Tr. 571-572. APRN Giesman noted that plaintiff had no problem "[t]aking care of personal hygiene[,]" and "[c]aring for physical needs[.]" Tr. 572. However, APRN Giesman stated that plaintiff had an obvious problem "[u]sing good judgment regarding safety and dangerous circumstances[,]" "[c]arrying out single-step instructions[,]" "[c]arrying out multi-step instructions[,]" and "[c]hanging from one simple task to another[.]" Tr. 572-573. APRN Giesman also

indicated that plaintiff had a serious problem "using appropriate coping skills to meet ordinary demands of a work environment[,]" "[h]andling frustration appropriately[,]" and "[f]ocusing long enough to finish assigned simple activities or tasks[.]" Id. APRN Giesman wrote that she could not comment on plaintiff's social interactions because plaintiff "has not worked during the time I've known her[.]" Tr. 573. The ALJ did not give this report "any weight[,]" finding it "clearly inconsistent with the Ms. Giesman's own treatment notes and not supported by the evidence of record." Tr. 24 (sic). The ALJ found "that Ms. Giesman completed this form in the manner of a sympathetic advocate rather than an objective medical source." Id.

> In a letter dated September 14, 2015, APRN Giesman wrote:
>
> Ms. Debra Young has been under my care for medication management services since May 2013. She is diagnosed with generalized anxiety disorder, ADHD, and major depression. I am unable to assess if she can or cannot work because I am not a disability provider and I do not perform examinations to determine if a client is unable to perform work of any kind.

Tr. 615.

Substantial evidence supports the ALJ's decision to afford no significant weight to APRN Giesman's July 9, 2013, Report. APRN Giesman indicated that she was unable to answer many of the questions on the report, and that she had only treated plaintiff three times over the course of about two months. See Tr. 383.

17

This limited treatment record supports the ALJ's decision to not give the report significant weight. See Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 401 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) (finding APRN's "relatively short treatment history" with plaintiff supported ALJ's decision to afford the APRN's opinion little weight). The ALJ's decision is further supported by the lack of contemporaneous treatment notes for the period covered by the report. See Pelland v. Comm'r of Soc. Sec., No. 5:14CV00029, 2014 WL 6814908, at *8 (D. Vt. Dec. 2, 2014) (ALJ's decision to afford a non-medical source opinion little weight was supported by the fact that the opinion was unsupported by any contemporaneous treatment notes.); see also Consiglio v. Berryhill, No. 3:17CV00346(SALM), 2018 WL 1046315, at *6 (D. Conn. Feb. 26, 2018) (finding lack of treatment notes supported ALJ's decision not to give controlling weight to a physician's opinion).

The ALJ gave weight to the April 3, 2014, Letter "to the extent that it [was] considered during the formulation of the residual capacity[.]" Tr. 23. Although the ALJ failed to assign specific weight to the letter, she explicitly stated that she considered the letter while formulating plaintiff's RFC. See id. Moreover, the ALJ's determination that plaintiff "cannot work with the general public[]" and "is limited to frequent direct interaction with her coworkers[,]" Tr. 20, is consistent with

APRN Giesman's opinion that plaintiff's "symptoms wax and wane related to psychosocial stressors and refractory mood symptoms[,]" Tr. 589. Accordingly, the ALJ's failure to assign "a specific, quantifiable weight" to the April 3, 2014, Letter was harmless to the extent it constituted error. Rodriguez v. Colvin, No. 12CV3931(RJS)(RLE), 2014 WL 5038410, at *6 (S.D.N.Y. Sept. 29, 2014) (finding ALJ's failure to assign specific weight to consulting doctor's opinion, which the ALJ determined supported the RFC, did not require remand); see Gonzalez v. Colvin, No. 15CV5011(KPF), 2016 WL 6780000, at *16 (S.D.N.Y. Nov. 16, 2016) (ALJ's failure to assign specific weight to state medical consultant's opinion "was at most harmless" where it was evident the ALJ incorporated the opinion "as a piece of substantial evidence."); Brito v. Colvin, No. 13CV6501(MWP), 2015 WL 1470555, at *24 (W.D.N.Y. Mar. 31, 2015) (ALJ discussed other source's "findings, which were generally consistent with the ALJ's RFC assessment[,]" so "any failure to assign a specific weight to the opinion was thus harmless and [did] not require remand."); cf. Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (deciding remand was unnecessary where there was "no reasonable likelihood" that considering an overlooked treating physician report "would have changed the ALJ's determination").

Substantial evidence supports the ALJ's decision to give no weight to the April 18, 2014, Report. APRN Giesman's opinions in

this report are not consistent with her treatment notes. The record contains treatment notes from seven treatment visits with APRN Giesman. See Tr. 575-576 (treatment notes from October 12, 2013); Tr. 577-578 (treatment notes from October 26, 2013); Tr. 579-580 (treatment notes from December 21, 2013); Tr. 581-582 (treatment notes from January 4, 2014); Tr. 583-584 (treatment notes from January 18, 2014); Tr. 585-586 (treatment notes from February 15, 2014); Tr. 587-588 (treatment notes from March 15, 2014). These treatment notes all describe plaintiff as having normal appearance, appropriate dress, normal motor activity, good insight, good or fair judgment, appropriate affect, anxious or euthymic mood, oriented to person, place, and time, intact memory, good attention and concentration, normal thought content, normal perception, normal flow of thought, appropriate interview behavior, and normal speech. See Tr. 575-588.

APRN Giesman stated that plaintiff had good judgment during six of plaintiff's visits, see Tr. 575-579, 581-588, and fair judgment during one visit, see Tr. 579. These observations are inconsistent with APRN Giesman's statement in the April 18, 2014, Report that plaintiff had an obvious problem "[u]sing good judgment regarding safety and dangerous circumstances[.]" Tr. 572.

APRN Giesman's observations that plaintiff had good attention and concentration, normal thought content, normal

perception, and normal flow of thought, see Tr. 575-588, are inconsistent with APRN Giesman's assertion in the April 18, 2014, Report that plaintiff had an obvious problem "[c]arrying out single-step instructions[,]" "[c]arrying out multi-step instructions[,]" and "[c]hanging from one simple task to another[,]" and a serious problem "[f]ocusing long enough to finish assigned simple activities or tasks[.]" Tr. 572-573.

These inconsistencies support the ALJ's decision to give no weight to the April 18, 2014, Report. See Luciano-Norman v. Comm'r of Soc. Sec., No. 5:16CV1455(GTS)(WBC), 2017 WL 4861491, at *6 (N.D.N.Y. Sept. 11, 2017), report and recommendation adopted, 2017 WL 4857580 (N.D.N.Y. Oct. 25, 2017) ("Here, the ALJ provided good reasons for affording 'little weight' to [the doctor's] opinion. Namely, [the doctor's] exertional limitations were inconsistent with other medical evidence in the record and inconsistent with his treatment notations."); Dieguez v. Berryhill, No. 15CV2282(ER)(PED), 2017 WL 3493255, at *5 (S.D.N.Y. Aug. 15, 2017) ("Accordingly, the Court finds that the ALJ's determination that [the doctor's] opinions were inconsistent with her contemporaneous treatment notes was based on substantial evidence, and affirms the ALJ's decision to give 'little weight' to [the doctor's] opinions."); Velez Santiago v. Colvin, No. 3:16CV338(JCH), 2017 WL 618442, at *9 (D. Conn. Feb. 15, 2017) ("Because [the doctor's] treatment notes constitute

substantial evidence in the case Record, an inconsistency between [the doctor's] opinion and his treatment notes would be a legally valid reason for the ALJ not to give [the doctor's] opinion controlling weight[.]" (quotation marks and citations omitted)); Lamorey v. Barnhart, 158 F. App'x 361, 363 (2d Cir. 2006) (finding physician's opinion was not entitled to controlling weight because it was "belied by his treatment notes[]").

The April 18, 2014, Report is also inconsistent with the evidence in the record as a whole. Dr. Jay Graves treated plaintiff for knee, wrist, and back pain. See, e.g., Tr. 309-311. In his treatment notes, Dr. Graves consistently described plaintiff as being alert. See Tr. 305, 308, 312, 339, 348, 350-352, 354, 359-360, 361-363, 365-366, 509; 513; 515, 521-524. Dr. Graves referred plaintiff to Dr. David L. Tinklepaugh to examine plaintiff's wrist. See Tr. 328. During his examination of plaintiff on June 28, 2011, Dr. Tinklepaugh observed that plaintiff's judgment and insight were intact, attention and mood were normal, and that plaintiff was oriented to person, place, and time. See Tr. 326, 377, 538. The APT Foundation treated plaintiff for opioid dependence, anxiety, and depression with medication management and supportive counseling. See Tr. 392-393. APT Foundation treatment notes consistently describe plaintiff as being alert, oriented, engaged, and focused. See

Tr. 395-396, 421, 425, 427, 436, 438, 439, 441-442, 445-446, 448, 453, 457, 462, 470, 473, 478, 480, 484, 487, 488, 494, 553, 561-565, 568-569, 590, 594-595, 597, 601, 603, 605-606, 608. The inconsistencies between APRN Giesman's April 18, 2014, Report and these treatment notes further support the ALJ's decision to afford the report no weight. See Belton v. Berryhill, No. 3:15CV1616(DJS), 2017 WL 930820, at *8 (D. Conn. Mar. 9, 2017) ("The ALJ's finding that the opinion ... was inconsistent with the treatment notes generated during the pertinent time period is clearly supported by substantial evidence, including ... those of the other treating physicians identified by the ALJ in her decision.").

Two State consultative professionals also reviewed plaintiff's file, and opined that plaintiff's limitations were less severe than those indicated in APRN Giesman's April 18, 2014, Report. Janine Swanson, Psy.D., determined that plaintiff is not significantly limited in her ability "to carry out short and simple instructions[,]" "perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances[,]" "sustain an ordinary routine without special supervision[,]" "work in coordination with or in proximity to others without being distracted by them[,]" or "make simple work-related decisions." Tr. 93. Dr. Swanson found that plaintiff is moderately limited in her ability to "carry

23

out detailed instructions[,]" "maintain attention and concentration for extended periods[,]" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[.]" Id. Dr. Swanson also stated that plaintiff does not have understanding and memory limitations, social interaction limitations, or adaptive limitations, and that plaintiff "is able to attend to simple tasks for at least two hours at a time[.]" Tr. 93-94.

Lindsay Harvey, Ph.D., found that plaintiff is not significantly limited in her ability to "carry out short and simple instructions[,]" "perform activities within a schedule[,]" "maintain regular attendance, be punctual within customary tolerances[,]" sustain an ordinary routine without special supervision[,]" "work in coordination with or in proximity to others without being distracted by them[,]" "make simple work-related decisions[,]" "ask simple questions or request assistance[,]" "accept instructions and respond appropriately to criticism from supervisors[,]" and to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Tr. 117-118. Dr. Harvey determined that plaintiff is moderately limited in her ability to "carry out detailed instructions[,]" "maintain attention and concentration for extended periods[,]" "complete a normal

24

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" "interact appropriately with the general public[,]" and to "get along with coworkers without exhibiting behavioral extremes[.]" See id. Dr. Harvey also stated that plaintiff does not have understanding and memory limitations, and that plaintiff "is able to attend to simple tasks for at least two hours at a time[.]" Tr. 117.

The inconsistencies between the opinions of Dr. Swanson and Dr. Harvey and APRN Giesman's April 18, 2014, Report supports the ALJ's decision to accord that report no weight. See Benjamin v. Colvin, No. 3:15CV1772(MPS), 2016 WL 6683538, at *5 (D. Conn. Nov. 14, 2016) (concluding that the ALJ's decision not to give controlling weight to a treating physician's opinion was supported by the inconsistency between the treating physician's opinion and that of the agency physician); Doner v. Comm'r of Soc. Sec., No. 7:13CV720(TJM)(TWD), 2014 WL 4794408, at *4 (N.D.N.Y. Sept. 24, 2014) ("[T]he ALJ discounted [the nurse practitioner's] opinion for its inconsistency with other medical evidence, has properly given good reason for the weight assigned to the opinion, and gave it proper consideration before doing so."); Schraut v. Comm'r of Soc. Sec., No. 2:13CV27, 2013 WL 5883840, at *6 (D. Vt. Nov. 1, 2013) ("[T]he regulations clearly permit the opinions of non-examining agency consultants to

override those of examining sources, when the former are more consistent with the record evidence than the latter."); Schlichting v. Astrue, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The testimony of plaintiff and plaintiff's sister, Heather Halem, further supports the ALJ's decision. Plaintiff testified that she lives with her daughter. See Tr. 51. Plaintiff testified that although she receives help from her sister, she "can take [care] of [her] own daughter[.]" Tr. 66. Plaintiff's sister testified that plaintiff is "capable of taking care of her [daughter]." Tr. 78. This testimony is inconsistent with APRN Giesman's assertion in the April 18, 2014, Report that plaintiff has a serious problem focusing long enough to finish assigned simple activities or tasks. See Jimenez v. Colvin, No. 12CV6001(PGG)(FM), 2016 WL 5660322, at *12 (S.D.N.Y. Sept. 30, 2016) ("The ALJ's findings that the claimant is independent in her activities of daily living, including taking care of three children ... support the ALJ's conclusion that Plaintiff can engage in simple, routine, low stress tasks[.]" (quotation marks and citations omitted)). This testimony therefore supports the ALJ's decision to afford APRN Giesman's April 18, 2014, Report

no weight. See Glena v. Colvin, No. 1:15CV00510(MAT), 2018 WL
739096, at *3 (W.D.N.Y. Feb. 6, 2018) (ALJ's assignment of
little weight to family practitioner's opinions proper "because
he found them to be inconsistent with Plaintiff's own testimony
and statements[]"); Moore v. Comm'r of Soc. Sec., No.
1:16CV270(DJS), 2017 WL 1323460, at *9 (N.D.N.Y. Apr. 10, 2017)
(finding the "ALJ properly discounted [the nurse practitioner's]
assessment of greater limitations for overhead reaching,
stooping, and kneeling as inconsistent with ... Plaintiff's
testimony of his daily activities[]").

Accordingly, substantial evidence supports the weight given
by the ALJ to each of APRN Giesman's opinions.

## C. Consultative Psychological Examiner

The Connecticut Disability Determination Service referred
plaintiff to Anthony F. Campagna, Ph.D. for a psychological
evaluation "to evaluate vocational disability." Tr. 545. Before
beginning his evaluation of plaintiff, Dr. Campagna "reviewed a
copy of an Adult Disability Report provided by the Disability
Determination Service." Id. This appears to be the only record
he reviewed. His report does not indicate that he reviewed
plaintiff's medical records. On December 10, 2013, Dr. Campagna
administered the following tests during his evaluation of
plaintiff: "Clinical interview, Cognistat, Wechsler Adult

Intelligence Scale - Form IV, and Millon Clinical Multiaxial Inventory - Form III." Id.

Plaintiff contends that the ALJ erred by giving "no weight to Dr. Campagna's opinion because she considered it inconsistent from the entire record." Doc. #15 at 13. Plaintiff argues that the record supports Dr. Campagna's opinion and that the ALJ erroneously substituted her own judgment for Dr. Campagna's medical opinion. See id. at 13. Defendant argues that substantial evidence supports the ALJ's determination, and that "the ALJ need not afford deference to an opinion that she reasonably finds unsupported or inconsistent with other substantial evidence." Doc. #20 at 25. Defendant further argues that the ALJ did not substitute her own judgment for a medical opinion, as "Dr. Campagna's opinion directly contrasts the DDS consultant psychologists[.]" Doc. #20 at 26.

"[T]he opinions of consulting sources, unlike those of treating sources, are entitled to no special deference." Lamorey v. Barnhart, 158 F. App'x 361, 363 (2d Cir. 2006). "[A] consulting physician's opinions or report should be given limited weight ... because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (quotation marks and citations omitted).

Dr. Campagna observed that "[t]hroughout the session, [plaintiff] appeared extremely uncomfortable[]" and that "[s]he avoided eye contact and turned her body away from the examiner." Tr. 547. Dr. Campagna stated that plaintiff "understood the instructions, but her responses were haphazard and poorly organized; often she appeared disrupted by distracting thoughts about the tasks." Id. Dr. Campagna further wrote that plaintiff "answered questions in very rapid, low pitched, poorly articulated speech; consequently approximately one-third of her remarks were incomprehensible." Id. In regard to the personality evaluation, Dr. Campagna found: "Validity scale items indicated that the claimant's protocol was invalid due to random responding. This result is consistent with indications of significant distractibility during the individually administered test and during her clinical interview." Tr. 548.

Dr. Campagna found that plaintiff's "behavioral and anxiety-related difficulties are expected to markedly reduce her ability to independently accomplish the full range of activities required for autonomous daily living and markedly reduce her ability to engage in all age appropriate interpersonal relationships." Tr. 548. He further opined that "[t]hese difficulties are expected to significantly reduce the concentration and persistence with which she performs even simple and repetitive tasks." Id. Finally, Dr. Campagna stated

that plaintiff may "have difficulty retaining instructions unless they are very familiar and highly over-learned[]" and that she "may be expected to have great difficulty responding appropriately to supervisors, coworkers, and the public and significant difficulty managing workplace pressures and adapting to workplace change." Id.

The ALJ gave Dr. Campagna's opinion "almost no weight as the claimant's presentation was so completely different from that which is described throughout the record." Tr. 22. The ALJ found that plaintiff's "presentation at ... Dr. Campagna's examination is so significantly different from her regular presentations at APT so as to make Dr. Campagna's report and opinion practically worthless." Id. The ALJ stated: "The treatment records, discussed in detail elsewhere in this decision, indicate that the claimant is almost invariably described by her treating practitioners as alert, oriented, engaged and focused. There is simply no support for Dr. Campagna's opinion contained in the record." Tr. 22-23.

Substantial evidence supports the ALJ's finding that plaintiff's presentation during Dr. Campagna's examination is in contrast to that reflected in the other treatment notes in the record. Dr. Tinklepaugh described plaintiff as having "normal fluency, no evidence of aphasia[,]" and normal attention. Tr. 326, 377, 538. APRN Giesman's treatment notes consistently

describe plaintiff has having good attention and concentration, appropriate interview behavior, and normal speech, thought content, perception, and flow of thought. <u>See</u> Tr. 575, 577, 579, 581, 583, 585, 587. Treatment notes from the APT Foundation consistently describe plaintiff as being alert, oriented, engaged, and focused. <u>See</u> Tr. 395-396, 421, 425, 427, 436, 438, 439, 441-442, 445-446, 448, 453, 457, 462, 470, 473, 478, 480, 484, 487, 488, 494, 553, 561-565, 568-569, 590, 594-595, 597, 601, 603, 605-606, 608. The APT Foundation treatment notes also describe plaintiff as being "engaged in discussion" and as giving "supportive feedback" to other group members. Tr. 395, 445; <u>see also</u> Tr. 480 (Plaintiff "was engaged in group discussion and gave peer support.").

Only in her evaluation by Dr. Campagna did plaintiff present as so impaired. This inconsistency in plaintiff's presentation supports the ALJ's decision to afford Dr. Campagna's opinion almost no weight. <u>See</u> <u>Boland v. Comm'r of Soc. Sec.</u>, No. 1:15CV1391(GTS), 2017 WL 1532584, at *5 (N.D.N.Y. Apr. 27, 2017) (finding substantial evidence supported affording little weight to consultative examiner's opinion because "Plaintiff's presentation at the consultative examination" was "in stark contrast with his presentation at typical examinations for treatment"); <u>McQuade v. Colvin</u>, No. 3:14CV1044(GTS), 2015 WL 7283185, at *6 (N.D.N.Y. Nov. 16, 2015) (finding substantial

evidence supported assigning limited weight to consultative examiner's opinion where "Plaintiff's presentation at the consultative examination was inconsistent with her typical presentation at treating medical provider office visits").

Substantial evidence also supports the ALJ's determination that Dr. Campagna's opinion is not supported by the record. Dr. Campagna opined that plaintiff's "behavioral and anxiety-related difficulties are expected to markedly reduce her ability to independently accomplish the full range of activities required for autonomous daily living and markedly reduce her ability to engage in all age appropriate interpersonal relationships." Tr. 548. However, the record reflects that plaintiff lives on her own and is the primary caretaker of her daughter. See Tr. 66, 78. Dr. Campagna found that plaintiff may "have difficulty retaining instructions unless they are very familiar and highly over-learned[,]" but both State consultative professionals determined that plaintiff is not significantly limited in her ability to carry out short and simple instructions. See Tr. 93, 117. Moreover, the APT Foundation treatment notes indicate that plaintiff was engaged and responding properly in discussions, see Tr. 395, 445, 480, which contradicts Dr. Campagna's conclusion that plaintiff "may be expected to have great difficulty responding appropriately to supervisors, coworkers, and the public and significant difficulty managing workplace

pressures and adapting to workplace change." Tr. 548. These
contradictions in the record support the ALJ's decision to
afford Dr. Campagna's opinion little weight. See Poupore v.
Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (substantial evidence
supported ALJ's finding that treating physician's testimony was
not entitled to significant weight because it was not supported
by other evidence in the record).

Dr. Campagna examined plaintiff only one time. See Tr. 545.
The Second Circuit has "cautioned that ALJs should not rely
heavily on the findings of consultative physicians after a
single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d
Cir. 2013). This limited treatment relationship supports the
ALJ's decision. See Duran v. Colvin, No. 14CV8677(HBP), 2016 WL
5369481, at *18 (S.D.N.Y. Sept. 26, 2016) (collecting cases);
Robles v. Colvin, No. 3:14CV1250(DNH), 2016 WL 814926, at *4
(N.D.N.Y. Feb. 29, 2016) (finding that "the length, nature,
frequency, and extent of a claimant's treatment relationship to
the medical source in question[]" were all "clearly permissible
reasons to discount a medical opinion").

The ALJ's assignment of almost no weight is further
supported by the fact that Dr. Campagna did not review
plaintiff's medical record. See Tr. 545; Maldonado v. Colvin, No.
15CV4016(HBP), 2017 WL 775829, at *18 (S.D.N.Y. Feb. 28, 2017)
("Opinions from a onetime consultative physician are not

ordinarily entitled to significant weight, in particular where that physician does not have the benefit of the complete medical record." (quotation marks and citations omitted)); Kitt v. Comm'r of Soc. Sec., No. 14CV5632(JG), 2015 WL 4199281, at *10 (E.D.N.Y. July 13, 2015) (determining consulting physician's opinion "deserved limited weight because consultative exams are often brief, are generally performed without reviewing the claimant's medical history, and offer only a glimpse of the claimant on a single day"). The Report indicates that Dr. Campagna reviewed only "a copy of an Adult Disability Report provided by the Disability Determination Service." Tr. 545.

Accordingly, substantial evidence supports the ALJ's decision to accord Dr. Campagna's opinion "almost no weight." Tr. 22.

### D. Listing 12.05(C)

Plaintiff argues that the ALJ erred by failing to consider whether "plaintiff's Full Scale IQ score of 70 may meet or equal Listing 12.05C[.]" Doc. #15 at 14. Plaintiff's argument consists of only two sentences and includes no citations to the record or to relevant case law. See id. Dr. Campagna's intellectual evaluation of plaintiff appears to be the only evidence of plaintiff's IQ in the record. Defendant contends that the ALJ did not err because she "gave little weight to Dr. Campagna's opinion[,]" and because "the ALJ's decision fully reflects why

the medical evidence of record fails to demonstrate deficits in

adaptive functioning[,]" as required to meet Listing 12.05(C).

Doc. #20 at 27-29.

Listing 12.05(C) states:

Intellectual disability refers to significantly
subaverage general intellectual functioning with
deficits in adaptive functioning initially manifested
during the developmental period; i.e., the evidence
demonstrates or supports onset of the impairment before
age 22.

The required level of severity for this disorder is met
when the requirements in A, B, C, or D are satisfied.

...

C. A valid verbal, performance, or full scale IQ of 60
through 70 and a physical or other mental impairment
imposing an additional and significant work-related
limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05(C). "For a

claimant to show that [her] impairment matches a listing, it

must meet all of the specified medical criteria. An impairment

that manifests only some of those criteria, no matter how

severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521,

530 (1990).

"While a qualifying IQ score may be prima facie evidence

that an applicant suffers from significantly subaverage general

intellectual functioning, §12.05, there is no necessary

connection between an applicant's IQ scores and her relative

adaptive functioning." Talavera v. Astrue, 697 F.3d 145, 153 (2d

Cir. 2012). "Instead, the regulations recognize that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." Id. (quotation marks and citations omitted). "Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life." Id. (quotation marks and citations omitted). "[C]ourts have held that if one is able to satisfactorily navigate activities such as living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction, one does not suffer from deficits in adaptive functioning." Id. (quotation marks and citations omitted).

Dr. Campagna performed an intellectual evaluation of plaintiff during his examination. See Tr. 547. He summarized plaintiff's results:

> Measures of verbal, visual, and motor functioning tend to cluster in the dull to normal range of accomplishment. She demonstrated comparatively strong nonverbal reasoning and relatively more difficulty retaining random digits when she was asked to reverse them. This deficit suggests a specific weakness in intermediate memory. The disparity between the claimant's verbal comprehension score of 72 and her perceptual reasoning result of 100 is consistent with her history of absenteeism and subaverage academic preparation. It also suggests that the Verbal Comprehension Index, Working Memory Score of 71, and Processing Speed score of 76 as well as the Full Scale IQ of 70 mildly underestimate her optimal level of functioning.

Tr. 547-548.

The ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 19. Although the ALJ did not specifically discuss Listing 12.05(C), she discussed plaintiff's intelligence evaluation and explained why she accorded Dr. Campagna's opinion "almost no weight." Tr. 22-23. The ALJ also indicated that she did not find that plaintiff suffered from deficits in adaptive functioning. She wrote: "In activities of daily living, the claimant has mild restriction. There claimant is frequently described as well-groomed and there is no evidence that she cannot take care of her activities of daily living." Tr. 19.

The record does not support a conclusion that plaintiff has an "IQ of 60 through 70[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05(C). Dr. Campagna's intellectual evaluation is the only evidence of plaintiff's IQ in the record. His intellectual evaluation tentatively indicated that plaintiff has an IQ of 70, which is the outer limit of Listing 12.05(C). See Tr. 548. However, Dr. Campagna suggested that plaintiff's IQ is actually higher. Tr. 548. He explained that the "disparity between the claimant's verbal comprehension score of 72 and her perceptual reasoning result of 100" suggests that "the Full Scale IQ of 70

mildly underestimate[s] her optimal level of functioning." Id.
Moreover, as discussed above, the ALJ appropriately afforded Dr.
Campagna's opinion almost no weight.

Even if the record established that plaintiff has an IQ
between 60 and 70, substantial evidence indicates that plaintiff
does not have "significantly subaverage general intellectual
functioning with deficits in adaptive functioning initially
manifesting in the developmental period[.]" 20 C.F.R. Pt. 404,
Subpt. P, App. 1, Listing 12.05. Plaintiff and her sister both
testified that plaintiff lives alone and cares for her daughter.
See Tr. 66, 78. Plaintiff also testified that she is capable of
going shopping on her own, as long as she takes her medication.
See Tr. 71. APRN Giesman found that plaintiff has no problem
"[t]aking care of personal hygiene" or "[c]aring for physical
needs[.]" Tr. 383, 572. Dr. Harvey and Dr. Swanson each
determined that plaintiff has only a mild restriction of
activities of daily living. See Tr. 92, 115. Therefore, the
ALJ's implicit finding that plaintiff was not intellectually
disabled, as defined by Listing 12.05(C), was supported by
substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 469
(2d Cir. 1982) ("[T]he ALJ's implicit finding that appellant is
not mentally retarded, as defined by s 12.05, is supported by
substantial evidence.").

Accordingly, the ALJ did not err by failing to explicitly discuss Listing 12.05(C) because "portions of the ALJ's decision and the evidence before [her] indicate that [her] conclusion was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982); see also Spaich v. Berryhill, No. 1:15CV00274(MAT), 2017 WL 6014451, at *4 (W.D.N.Y. Dec. 5, 2017) ("[T]he ALJ did not err in failing to specifically discuss Listing 12.05(C), because the evidence does not indicate that plaintiff qualified under that listing."); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112–13 (2d Cir. 2010) ("[A]lthough the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.").

### E. Vocational Expert

Plaintiff argues the "ALJ erred in not having a vocational expert available to testify[.]" Doc. #15 at 14. Plaintiff states that "where non-exertional impairments exist, the Grids are deemed not sufficient, and the Administration must introduce the testimony of a vocational expert." Doc. #15 at 15. Defendant argues that "the ALJ properly found that although the Plaintiff's RFC for a full range of work at all exertional

levels had been somewhat impeded by non-exertional limitation,
such limitation had little to no effect on Plaintiff's overall
ability to perform the basic demands of competitive,
remunerative, unskilled work[.]" Doc. #20 at 30. Defendant
contends that, therefore, "the ALJ properly relied on Rule
204.00 of the Medical-Vocational Guidelines as a framework in
finding Plaintiff not disabled." Doc. #20 at 31.

"In some cases, the Commissioner can rely exclusively on
the medical-vocational guidelines (the "Grids") contained in
C.F.R. Part 404, Subpart P, Appendix 2 when making the
determination at the fifth step." Rousey v. Comm'r of Soc. Sec.,
285 F. Supp. 3d 723, 734 (S.D.N.Y. 2018). "The Grids take into
account the claimant's RFC in conjunction with the claimant's
age, education and work experience. Based on these factors, the
Grids indicate whether the claimant can engage in any other
substantial gainful work which exists in the national economy."
Id. (quotation marks and citations omitted).

Plaintiff contends that the ALJ must introduce testimony
from a vocational expert "where non-exertional impairments
exist[,]" Doc. #15 at 5, but the cases cited by plaintiff do not
support her argument. In Bapp v. Bowen, 802 F.2d 601 (2d Cir.
1986), the Court held that the application of the Grids is
inappropriate where plaintiff has a non-exertional impairment
that "so narrows [her] possible range of work as to deprive

40

[her] of a meaningful employment opportunity." Bapp, 802 F.2d at 601. In Rosa v. Callahan, 168 F.3d 72 (2d Cir. 1999),[5] the Court determined that "sole reliance on the grids may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." Rosa, 168 F.3d at 72 (quotation marks and citations omitted). Therefore, vocational testimony is only necessary where the plaintiff "has nonexertional limitations that significantly limit the range of work permitted by [her] exertional limitations[.]" Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (emphasis added; quotation marks and citation omitted).

Here, the ALJ determined that plaintiff does not have such significant nonexertional limitations. The ALJ found that plaintiff could "perform a full range of work at all exertional levels[,]" but with the following non-exertional limitations: "The [plaintiff] is limited to simple, routine tasks. She cannot work with the general public. She can relate appropriately with coworkers, but is limited to frequent direct interaction with

---

[5] This case is also inapposite, as plaintiff was limited to sedentary work and had significant nonexertional impairments that "raise[d] significant doubts as to [plaintiff's] capacity to perform [sedentary employment]." Rosa, 168 F.3d at 82. Here, plaintiff has no exertional limitations and her nonexertional impairments are not significant.

her coworkers." Tr. 20. The ALJ determined that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." Tr. 25. The ALJ found that "[a] finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." Id. Accordingly, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Id.

The capacity to perform work at all exertional levels includes heavy work.

> Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work — either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

20 C.F.R. Pt. 404, Subpt. P, App. 2.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."

SSR 85-15, 1985 WL 56857 at *4 (S.S.A. Jan. 1, 1985). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." Id.

The ALJ determined that plaintiff is limited to simple routine tasks, which is consistent with the demands of unskilled work. See SSR 85-15, 1985 WL 56857 at *4 (Unskilled work requires "the abilities ... to understand, carry out, and remember simple instructions[.]"). Therefore, this limitation does not substantially reduce plaintiff's ability to perform unskilled work. See Medley v. Colvin, No. 14CV350(WMS), 2015 WL 4112477, at *2, *5 (W.D.N.Y. July 8, 2015) (finding the ALJ properly determined that being limited to performing simple repetitive tasks, with transient and superficial contact with coworkers, the public, and supervisors did not limit plaintiff's ability to perform unskilled work).

Plaintiff's inability to work with the general public also does not significantly diminish the base of unskilled jobs. See Brown v. Colvin, No. 3:14CV1784(WIG), 2016 WL 2944151, at *5 (D. Conn. May 20, 2016) ("A limitation to occasional interaction with others does not significantly limit the range of unskilled work, and reliance on the Grids in such an instance is

43

appropriate."); Verret v. Colvin, No. 3:14CV234(SRU), 2016 WL
1182980, at *2 (D. Conn. Mar. 28, 2016) (ALJ did not err by
relying on the Grids because the "ALJ's description of
[plaintiff's] RFC allowing 'simple' work with 'one or two-step'
instructions and 'only occasional interaction' with others is in
accord with the description of unskilled work that requires
following simple instructions — especially in light of the fact
that such jobs ordinarily involve dealing primarily with
objects, rather than with data or people." (quotation marks and
citation omitted)); Degraw v. Colvin, No. 3:13CV782(GLS), 2014
WL 3038279, at *6 (N.D.N.Y. July 3, 2014) (finding "the use of a
VE was unnecessary[]" because plaintiff "was limited to simple
tasks and only occasional contact with the general public, and
unskilled work primarily involves objects, not data or
people[]"); Jones v. Colvin, No. 11CV445(MAT), 2014 WL 1976921,
at *12 (W.D.N.Y. May 15, 2014) (finding the ALJ properly relied
on the Grids where the ALJ determined plaintiff's RFC "allowed
for unskilled work at all exertional levels with little to no
interaction with the public"); Stoddard v. Astrue, No.
3:05CV362(NPM), 2009 WL 3644212, at *6 (N.D.N.Y. Oct. 27, 2009)
(concurring with the ALJ's determination that "plaintiff's
ability to perform work at all exertional levels was not
significantly compromised by" being limited to "no more than
limited public contact with others[]").

Plaintiff does not argue that she has impairments that significantly limit her ability to perform unskilled work, nor does she cite to any portion of the record suggesting such a limitation. See Doc. #15 at 14-15. Therefore, the ALJ did not err by determining that plaintiff's nonexertional limitations have "little or no effect on the occupational base of unskilled work at all exertional levels." Tr. 25; see Pritchard v. Colvin, No. 1:13CV945(DNH)(CFH), 2014 WL 3534987, at *10 (N.D.N.Y. July 17, 2014) (finding "the ALJ was permitted to rely on the Grids" where plaintiff failed to "cite to any portion of the record or any treatment note that indicates that plaintiff's non-exertional impairments significantly impact[] her ability to perform work-related functions[]").

Accordingly, the ALJ appropriately relied on the Grids to determine that plaintiff can perform a significant number of jobs in the national economy. See Crothers v. Colvin, No. 13CV4060(VEC)(KNF), 2015 WL 437403, at *10 (S.D.N.Y. Feb. 3, 2015), report and recommendation adopted, No. 13CV4060(VEC)(KNF), 2015 WL 1190167 (S.D.N.Y. Mar. 16, 2015) (finding the ALJ did not commit legal error by failing to use a vocational expert because "he determined that [plaintiff's] non-exertional impairments do not significantly diminish [plaintiff's] ability to work"); Zabala, 595 F.3d at 411 ("The ALJ found that Petitioner's mental condition did not limit her

ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision. Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical-Vocational Guidelines was permissible.").

### F.   Plaintiff's Sister's Testimony

Plaintiff argues that the ALJ erred by failing to give proper consideration to the testimony of plaintiff's sister, Heather Halem. See Doc. #15 at 15. Plaintiff states that the ALJ "devote[d] two sentences to summarize the testimony of plaintiff's sister[,]" and that the ALJ "otherwise gave no consideration, or weight to it." Doc. #15 at 15. Defendant argues that "any alleged error in the ALJ not providing a more detailed discussion of Plaintiff's sister's testimony was harmless, given that there was no reasonable likelihood that her testimony, which was substantially similar to Plaintiff's, would have changed the ALJ's decision." Doc. #20 at 31.

The Regulations direct ALJs to consider "observations by ... other persons[]" when evaluating the intensity and persistence of plaintiff's symptoms. 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). Plaintiff states that "[l]ay evidence as to one's ability to function is 'valuable in assessing the credibility of the [claimant's] testimony.'" Doc. #15 at 15 (quoting Lopez v Secretary of HHS, 728 F.2d. 148, 150 (2d Cir. 1984) (ordering

remand because the ALJ refused to allow a lay witness to testify at the hearing)).

The ALJ allowed Ms. Halem to testify and asked her questions during the hearing regarding her observations. <u>See</u> Tr. 75-84. The ALJ also discussed Ms. Halem's testimony in her decision: "The claimant's sister testified on the claimant's behalf to her inability to focus and stay on task for the simplest things, including just making dinner." Tr. 24.

"[A]n ALJ must make a credibility finding of lay witness testimony only when that testimony is critical to the adjudication of an application. Testimony is critical to the adjudication of an application when the failure to address such testimony undermines the ALJ's decision, <u>e.g.</u>, when the testimony ignored is that of the claimant herself." <u>Burden v. Astrue</u>, 588 F. Supp. 2d 269, 278 (D. Conn. 2008).

Here, the ALJ's failure to make a credibility finding regarding Ms. Halem's testimony does not undermine her determination that plaintiff is not disabled. Plaintiff correctly observes that lay witness testimony is valuable in assessing the credibility of a plaintiff's testimony, but plaintiff does not argue that the ALJ improperly assessed plaintiff's credibility. <u>See</u> Doc. #15 at 15. Moreover, plaintiff does not cite to the record or offer any arguments regarding the possible relevance of Ms. Halem's testimony. <u>See</u> <u>id.</u> As

discussed throughout this Ruling, the ALJ's decision was based primarily on the treatment notes in the record and the opinions of the State consultative professionals that reviewed plaintiff's file. As a result, the ALJ's failure to assign specific weight to Ms. Halem's testimony was not legal error.

## VI.  CONCLUSION

For the reasons set forth herein, the Court finds that the decision of the ALJ is supported by substantial evidence in the record and no legal error was committed. Therefore, defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #19]** is **GRANTED.** Plaintiff's Motion for Reversal or Remand of Commissioner's Decision **[Doc. #14]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 12th day of June, 2018.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
